CUMBERLAND CORPORATION
v.
E. I. DuPONT de NEMOURS
AND COMPANY
v.
KUSAN, INC.
Civ. A. No. 6334.

United States District Court,
E. D. Tennessee, S. D.

Oct. 19, 1973.

David A. Dycus, Shumacker & Thompson, Chattanooga, Tenn., for plaintiff.

James W. Gentry, Jr., Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., for defendant.

Thomas S. Kale, Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for third-party defendant.

## MEMORANDUM and ORDER

FRANK W. WILSON, Chief Judge.

This is a products liability case in which Cumberland Corporation seeks to recover over against Kusan, Inc., the E. I. du Pont de Nemours and Company (DuPont) for direct and consequential damages arising out of the use of DuPont polyethylene in certain milk cartons or cases that were manufactured by Cumberland. It is alleged that as a result of DuPont's failure to include an ultraviolet inhibitor in the polyethylene, the milk cases were damaged when exposed to sunlight. DuPont, in turn, seeks to recover over against Kusan, Inc., the

company that performed the actual molding of the polyethylene for Cumberland.

The lawsuit is presently before this Court upon DuPont's motion for summary judgment. The substance of the defendant's motion is that the tort claims of the plaintiff are barred by the applicable statute of limitations and the breach of warranty claim is barred for lack of privity. After a study of the pleadings, the rather extensive discovery record and the briefs submitted by the parties, the Court is of the opinion that the motion for summary judgment should be denied.

The following facts appear undisputed in the record. Cumberland manufactures products for the dairy industry and has manufactured milk cases for a number of years. Prior to 1967, it manufactured these cases out of wire, with the bottom portion of the case being made of polypropylene, a type of plastic. Sales of this product were substantial, but it developed that numerous purchasers complained that the polypropylene was not slippery enough to permit the case to be moved easily over concrete surfaces that are common in dairies. Efforts to make the product conform to this requirement proved unsuccessful, and a decision to find a new plastic for the case floors was made.

On August 22, 1967, officials of Cumberland met with sales representatives from several plastic manufacturers, including DuPont, at the office of the third-party defendant, Kusan, Inc. Kusan's function was to mold the plastic resin for Cumberland's use in producing the finished milk cases. At this meeting, it appears that Cumberland's officials outlined to DuPont's representatives the need for a plastic resin that would be both strong and slippery. Although there is a factual dispute as to how extensively the use of the milk case was explained to DuPont, from the information acquired at the meeting Cumberland concluded that DuPont's product, polyethylene, might be suitable for use in the manufacture of its milk cases.

On September 8, 1967 another meeting was held to further explore the use of DuPont's product. Thereafter, at sometime in the fall of 1967, Cumberland decided to use the DuPont material. DuPont then invoiced the plastics to Kusan who molded the resin and in turn reshipped the product to Cumberland. There appears to be some dispute as to whether Kusan billed Cumberland for the plastics at cost or whether a profit was added to the price of the plastic. There may be an issue of fact in this regard bearing on the question of privity between Cumberland and DuPont.

There are indications that DuPont may have known of the need for an ultraviolet inhibitor in a product use of this type, for there is evidence in the record that DuPont knew that these cases would be exposed to sunlight. It appears that in April of 1968, officials of DuPont specifically stated that the milk cases with the polyethylene floors could be stored out of doors. To the extent relevant to the present motion, issues of fact exist regarding these matters.

As a result of the damage to the cases, Cumberland has alleged both direct financial damage in replacing defective cases and, in addition, a consequential "loss of business and damage to its reputation in the industry, and loss of other goodwill." For this it seeks to recover on theories of breach of implied warranty, fraud and deceit, negligent misrepresentation, and negligence.

It appears that the problem with the case floors made of the DuPont product was first noticed in the fall of 1968 and the damage was sustained sometime thereafter. This action was commenced September 3, 1971. As is typical of many products liability cases brought in Tennessee, the defendant has raised in its defense the statute of limitations and the issue of privity.

■■ Taking up first the privity issue, there is little doubt that privity of contract is necessary to maintain an action for breach of warranty in this case. Although the Tennessee General Assem-

bly abolished the requirement of privity on April 10, 1972 (T.C.A. § 23–3004), it is clear that this legislation does not affect sales made before the effective date of this statute. Anderson v. Watling Ladder Co., 472 F.2d 576 (6th Cir. 1973); Moulton v. Ford Motor Co., May 25, 1973 (E.S.) (Tenn.App.), rev'd on other grounds, 511 S.W.2d 690 (Tenn. 1974). Prior to the adoption of T.C.A. § 23–3004 privity was clearly required in Tennessee. Hargrove v. Newsome, 225 Tenn. 462, 470 S.W.2d 348 (1971). Thus to maintain an action for breach of implied warranty, Cumberland must be prepared to show the existence of privity of contract between itself and DuPont.

■ The substance of DuPont's position is that it invoiced the plastics to and received payment from Kusan. While this is persuasive support for DuPont's contention that it had no contract with Cumberland, it is not conclusive. There is an inference from the record that the real sale was between DuPont and Cumberland. Since it is clear from T.C.A. § 47–2–204 that conduct can show the existence of a contract, it cannot be said on a motion for summary judgment that there was in fact no contract between Cumberland and DuPont. If privity did exist, Cumberland may have its action on T.C.A. § 47–2–315, alleging a breach of the implied warranty of fitness for a particular purpose, and it can seek to recover both direct and consequential damages under the Hadley v. Baxendale principle that is embodied in T.C.A. § 47–2–715.

■■ Furthermore, if the existence of privity can be shown, the applicable statute of limitations on the implied warranty count would be the four year provision contained in T.C.A. § 47–2–725. This would be the case regardless of the type of actual harm sought to be redressed. Layman v. Keller Ladders, Inc., 224 Tenn. 396, 455 S.W.2d 594 (1970). Defendant vigorously asserts that this period must be calculated from August 22, 1967—the date of the meeting at Kusan's office. This position is without merit, however, as the earliest point at which the statute could have begun to run was at the tender of delivery (T.C.A. § 47–2–725). The record is clear that this occurred sometime after September 8, 1967, and within a four year period of the filing of the lawsuit.

■ Turning to the statute of limitations issues raised in the defendant's motion, it may be noted that the plaintiff's initial contention is that the six year statute of limitations applicable to contract actions (T.C.A. § 28–309) should govern this case since the plaintiff's principal element of damage is "commercial" loss. This contention is believed to be without merit. It is apparent that the plaintiff seeks to recover here for losses tortiously inflicted or for losses inflicted by breach of warranty. If the plaintiff's losses had their origin in the defendant's tortious conduct, it is apparent that the action must be governed by the three year tortious injury to property statute (T.C.A. § 28–305). If the plaintiff's losses had their origin in the defendant's breach of warranty, it is apparent that the action must be governed by the four year breach of warranty statute (T.C.A. § 42–2–725).

The limitations issue raised by the defendant's motion for summary judgment is directed not so much to a determination of the applicable statute of limitations as it is to the inception date of the running of the applicable statute of limitations or the date of accrual of the plaintiff's cause of action.

■ It is the position of the defendant that any claim made by the plaintiff for tortious injury must have "accrued" as of the date of the alleged wrongful conduct on the part of the defendant, and not as of the date of the plaintiff's injury or awareness of injury. The defendant arrived at this conclusion by reference to the construction placed upon the word "accrue" by the Tennessee Supreme Court in the case of Jackson v. General Motors Corporation, 223 Tenn. 12, 441 S.W.2d 482 (1969), in

construing the identical language in the Tennessee personal injury limitation statute (T.C.A. § 28–304). The defendant further rationalizes that although the legislature amended the personal injury statute so as to abolish the rule in Jackson v. General Motors as it relates to that statute and caused the running of the statute to commence as of the date of the injury rather than the date of the wrongful act (See amendment to T.C.A. § 28–304 effective April 11, 1972), no comparable legislative change has been made in the subject property damage statute of limitation and accordingly the rationale of *Jackson* is still applicable to the term "accrue" as it is used in that statute.

The plaintiff responds to these arguments of the defendant by attacking the irrationality of the rule laid down in the *Jackson* case and by contending that the plaintiff's action did not "accrue" until the plaintiff sustained injuries in 1969.

The irrationality of the rule in the *Jackson* case is not difficult to establish. This Court has had occasion to write no less than six opinions dealing with that irrationality. (See the opinions of this Court in Hindman v. City Tank Corp., Civil Action 5472, Hargraves v. Brackett, Civil Action 5485, and Baldwin v. Ayerst Laboratories, Civil Action 6595. See also the opinions of the Sixth Circuit Court of Appeals in Vason v. Nickey, 438 F.2d 242, and Hodge v. Service Machine Co., 438 F.2d 347. However, the Tennessee Supreme Court has stood by its decision in *Jackson* in the face of all criticism, both legislative and judicial. See Hargrove v. Newsome, 225 Tenn. 462, 470 S.W.2d 348 (1971), and Flynn v. Camp, 225 Tenn. 457, 470 S.W. 2d 347 (1971). This being a diversity action, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, requires that this Court accord recognition to that devotion.[1]

In line with the rationale of the Jackson v. General Motors case, *supra,* the Court is accordingly of the opinion that T.C.A. § 28–305 must be construed as commencing to run from the date of the wrongful act or omission "whether the damages occasioned were on the same date or later". Hargrove v. Newsome, 470 S.W.2d 348 at 352. Some further uncertainty is occasioned by the fact that the court in *Jackson* states in principle that the statute commences to run as of the date of the wrongful act, but holds in fact that the statute commences to run as of the date of the sale. What the court in fact did, rather than what it said in principle, would appear to establish the law that must here be followed. Accordingly, the three year limitation period provided in T.C.A. § 28–305 would have commenced running as of the date or dates of polyethylene sales. When so construed, it is apparent that issues of fact exist in this lawsuit both as to the inception date of the initial running of the statute and as to whether a continuing tort may have been committed so as to toll the initial running of the statute. The defendant's motion for summary judgment will be denied.

It is so ordered.

[1]. The repeated difficulties encountered with limitations issues in products liability cases in Tennessee is illustrative of the need for careful and thorough legislative revision in this area of the law. In traditional tort actions, for which the present legislative scheme of limitations was devised, the wrongful act and the resulting injury almost always occurred simultaneously. With the development of the law of products liability in recent years, however, the reverse of this has become the rule, with an interval of time almost always elapsing between the wrongful act and the injury, oftentime a very substantial interval of time, as illustrated by a case currently before this Court in which an interval of 40 years has elapsed between the alleged defect and the injury. Instead of making a re-evaluation of the interests of the plaintiff, of the defendant and of the public, and developing a rational system of limitations in the light of the developing law of products liability, there has been a seesaw judicial and legislative attempt in Tennessee to fill old bottles with new wine. The inevitable result of this approach has been some cracking of the bottles. This cracking will no doubt continue until there has been an appropriate legislative revision of the law in this area.