**WALKER TRUCK CONTRAC-
TORS, INC.**

v.

**CRANE CARRIER CO., et al.**

Civ. No. 3–75–118.

United States District Court,
E. D. Tennessee, N. D.

July 25, 1975.

Supplemental Memorandum Aug. 8, 1975.

Calvin N. Taylor, Knoxville, Tenn., for plaintiff.

J. W. Baker, Robert R. Campbell, E. Bruce Foster, Knoxville, Tenn., for defendants.

BENCH MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Walker Truck Contractors, Inc., seeks damages against Crane Carrier Co., Spicer Division of Dana Corporation, and North American Rockwell for damages arising out of some nineteen trucks purchased by Walker from the Tennessee Truck & Equipment Company. Fifteen of these trucks were the 1972 model and four were the 1973 model. At least fifteen of them were purchased upon the representation that these vehicles would perform at least equivalent to Mack trucks with which Walker was familiar and were the proper type of vehicle for the Walker operation.

From the beginning of the use of these trucks, mechanical problems developed in the drive train so that Walker was unable to use the vehicles in its business at times because of an innumerable number of breakdowns.

Walker claims that the vehicles were in an unreasonably dangerous condition both as to the component parts and as to the overall vehicle at the time the vehicles and the parts left the manufacturers.

Walker claims that the vehicles were negligently designed and manufactured both as to the overall truck and the component parts. Walker relies on an alleged violations of 402A, 402B, and 552D of the Restatement of the Law of Torts, 2d Ed.

Section 402A does not apply because the evidence is not sufficient to show that these trucks and the component parts were defective to the extent that they were unreasonably dangerous. Neither does 402B apply because that section only relates to situations where personal injuries are involved.

Walker says further that the defendants breached the implied warranties set out in 47–2–315 and 47–2–314, T.C.A.

This contention raises serious questions, many of which have not been definitely settled by court decisions, but to which brief reference will be made later.

As defenses, Crane Carrier says that the trucks were assembled as required without third axles and dump bodies, and in the assembly it used a transmission which was supplied by Spicer and differentials which were supplied by Rockwell. Both Spicer and Rockwell approved the use of their respective components in the truck with knowledge of the other components to be used including the power train engine, the transmission and differential.

Crane denies that it was at fault and denies it is liable to Walker on any theory. If Crane is liable in any amount it claims that it is entitled to be indemnified by Spicer and Rockwell, one or both, whichever may be shown to be at fault.

Crane has sued Spicer and Rockwell to recover any amount which it may be obligated to pay.

Spicer and Rockwell have made claims by way of cross-actions against Crane.

Crane says in effect that if it is determined that Spicer and Rockwell, one or both, supplied defective components so as to be liable to Walker, then it should be permitted to recover against Spicer and Rockwell.

Spicer denies liability to plaintiff and to Crane. It admits that it manufactured and sold the transmissions which were installed by Crane upon certain trucks which were acquired by Walker. Spicer denies that it made the warranties that are claimed by Walker, and de-

nies that it breached any warranties if it is held that such warranties existed, and further denies that Walker may proceed on the theory of warranty by reason of a lack of privity. Spicer further denies the applicability of Sections 402A and 402B, Restatement of Torts, 2d Ed.

Spicer says further that if the averments in the complaint referring to wrongful acts and omissions on the part of Crane and North American Rockwell are true, such acts and omissions comprise the sole cause of Walker's damages, or the alternative comprises efficient intervening causes isolating Spicer from the claims of Walker.

Spicer further says that Crane and Walker misused the products of Spicer, meaning the component parts furnished by Spicer and which went into the trucks.

Spicer denies any and all liability to the cross-claimant. Spicer says further that if it is liable to Walker, which is denied, it is entitled to judgment over against Crane by reason of Crane's misuse of Spicer products.

The theories of Rockwell are that Crane purchased rear axle assemblies from it which Crane combined with other components either purchased from third parties or manufactured by Crane and that the resulting products or trucks were sold to various purchasers and that the trucks in litigation were sold by Crane to Tennessee Truck & Equipment Co., Inc., which in turn sold said trucks to Walker and there could be no liability upon the part of Rockwell.

Rockwell says further that the products sold by Rockwell to Crane were sold and accepted by Crane pursuant to express warranties specifically excluding the implied warranties of merchantability and fitness for purpose and excluding the right of recovery of consequential damages against Rockwell. Rockwell's only obligation under its warranty was to replace defective parts within the time specified in the warranty which was done.

The axle assemblies sold by Rockwell were ordered by Crane by catalog number which described axles made in accordance with certain detailed specifications known to Crane at the time the orders were placed. The axle assemblies were manufactured and delivered to Crane as ordered. Said axle assemblies had been manufactured and distributed by Rockwell in accordance with those same specifications without material modification for more than twenty years and had been used successfully in various truck operations throughout the entire period of their manufacture, and the axles delivered to Crane were exactly as ordered.

Rockwell says further that by reason of its express warranty excluding all implied warranties it is not liable to Walker for breach of warranty and in no event can it be held liable for consequential damages.

Rockwell says further that Walker accepted the terms, conditions and disclaimers contained in an express warranty made to Walker by defendant Crane and by reason of the terms and conditions contained in said express warranty the claims of Walker are barred in whole or in part. Rockwell denies that Walker may successfully proceed on the theory of breach of warranty by reason of lack of privity.

Rockwell denies it negligently designed, engineered and manufactured the axle assemblies or that they were inherently dangerous.

The Court agrees with Rockwell that Section 402A and 402B, Restatement of Torts, 2d Ed. do not apply to the facts as developed by the evidence in this trial.

Rockwell denies that it breached any duty owed to Walker. Rockwell says further than Walker ordered the trucks involved in the litigation from Crane specifying a particular power train consisting of a specifically described engine, transmission and rear axle assembly and that the trucks purchased by

Walker contained a power train exactly as specified including the rear axle assembly manufactured by Rockwell.

Rockwell says further that one or more of the following constituted the proximate cause of Walker's claimed damages:

(a) Specifications by Walker of vehicles of insufficient capacity for the use to which they were to be subjected;

(b) Specification by Walker of vehicles with power train components which were incapable for the use to which they were to be put;

(c) Abuse of vehicles;

(d) Subjecting of the vehicles to stress beyond their capacity;

(e) Lack of or insufficient service and maintenance of the vehicles;

(f) Matters set forth in the complaint which if true fix the responsibility upon Crane and Spicer.

Rockwell denies that it is liable on the cross-claim filed against it by Crane.

Rockwell says it is entitled to recover under its cross-claim against Crane.

The issues as formulated in the Pre-trial Order are as follows:

(1) Were the vehicles described in the complaint negligently designed and manufactured both as to the over-all truck and component parts and were they unreasonably dangerous when placed on the market in violation of Section 402A, Restatement of Torts, 2d Ed., or Section 402B?

As previously indicated there can be no liability in this case under either Section 402A or Section 402B.

(2) Did the defendants in placing the trucks on the market violate an express or·implied warranty and thereby violate Section 47–2–315 and/or 47–2–314, T.C.A., as to implied warranty of fitness or merchantability?

(3) If plaintiff is entitled to recover, from what defendant or defendants and how much?

The evidence shows that the Walker Truck Contractors have for many years been engaged in the business of contract hauling in Knox County, Tennessee and surrounding areas as well as in various southern states. Sometime prior to December of 1970 Crane representatives, manufacturers of dump trucks and other trucks, contacted Walker, through their dealer and in person, and advised Walker that they had manufactured a truck which was equivalent to any truck on the market and particularly to the Mack truck which Walker had been using.

In December of 1970 at the invitation of Crane, a meeting was held in Tulsa, Oklahoma, and a model·was displayed by Crane at that meeting. Crane representatives stated that with certain modifications they would use a 1972 model as modified which would be equal to or better than the Maxidine Mack Truck, and upon this representation Walker placed an order for fifteen 1972 model Crane Carrier trucks.

The power train in the truck consisted of an engine, transmission and a differential. Walker accepted the change in the power train, particularly insofar as the Cummins engine is concerned in the design of the truck, and the power train was approved by Rockwell and also by Crane. All of the approval was done on paper and there was no field testing.

The trucks were in due time delivered to Walker here in Knoxville in September of 1972 with the Cummins diesel engine, the Spicer transmission and the Rockwell differential having a ratio of 5.21. Soon after delivery Walker experienced extreme difficulty in keeping the trucks on the road on account of numerous breakdowns due to the fact, among other things, that the input shaft was too soft and the gears both in the transmission and differential were overloaded and the vehicles began to break down.

Walker contacted almost every parts dealer that it could find in an effort to secure parts to keep the trucks on the road. The record indicates that he was able to keep the trucks on the road for at least periods of time. The input shafts were replaced with harder metal

shafts and thereafter there was certain shearing of bolts within the differential which were also replaced.

During this period Walker was in desperate financial circumstances and he went beyond the line of duty apparenly to keep the trucks on the road.

Upon discovery of the trouble Walker contacted the defendants and their representatives were dispatched to Knoxville to study the problem. The input shafts were defective and in order to alleviate the defects in the power train a ratio change from 5.21 to 5.78 was suggested, and when this did not relieve the defective condition another ratio was suggested of 6.44; however, due to the defective manufacture of the trucks the change in the ratio did not alleviate the problems with which Walker was confronted.

Walker continued to experience trouble with the ring gear and pinion, breaking of bolts, bolts coming off or shearing off, and it was finally ascertained that the gears in the differential were overloaded and inadequately designed and manufactured according to approved standards.

As a result of the defective condition of the trucks as previously indicated, many breakdowns or failures occurred which required replacing of parts and labor incident thereto.

▆▆▆ In the opinion of the Court, and the Court finds, Crane is liable to Walker Truck Contractors for the damage sustained by Walker as a direct and proximate result of the defects in the trucks. This liability stems from Section 552D of the Restatement of Torts, 2d Ed., Tentative Draft, and possibly a breach of implied warranty of fitness under Sec. 47-2-315, Tenn.Code Annotated. We do not think the disclaimer of Crane is sufficient to relieve Crane of liability from an implied warranty of fitness for the purpose that the trucks were to be used.

It is the Court's present view without so holding at this time, as it desires to make further study of the question, that Rockwell is liable. The defenses made by Rockwell in the case do not appeal to this Court.

Rockwell has sought by its evidence to show that all of the fault for the troubles which are the subject of this lawsuit was that of Walker. Serious doubt is cast on this contention by certain statements of its representative, Mr. Grace, as follows. Mr. Grace said:

"I think some of the significant things mentioned to me—they have never bent a housing or lost a wheel bearing or broke an axle shaft on any one of the vehicles with the SRDD; furthermore, they have never had clutch trouble with them so it would not indicate they are over-loading the things or treating them as rough as some of our people may want to believe."

That quotation is taken from a letter of Mr. Grace dated December 7, 1973 to Mr. Clemence, another Rockwell employee.

Again, in another letter dated September 7, 1974, Mr. Grace said, in part:

"I know most of our people don't have any sympathy much with construction operators and it is always the case of overloaded or not geared right or something, but when our axle fails where our single reduction axle goes in and does the job, competitors axles do the job, something has got to be wrong.

"There is another thing for sure, Crane Carrier has more damn failures than any other one carrier I run across. Every time they use our stuff, it looks like they are using wrong axles or something is wrong. I wish to goodness we would get some body (sic) to go there and straighten them out, either sell right axles or quick (sic) putting them out in the field. We get a tremendous amount of grief over these things. I don't know how the company feels about Tennessee Truck and Equipment Company and whether they want to do anything for them, perhaps not—but

it sure is a disgusting situation. I walked back in the shop yesterday and most of trucks in there had the rear ends out of them, they were SRDD's. I would appreciate your comments and, also, like to be advised of the SRDD."

It was agreed by the parties that Judge Bare, Referee in Bankruptcy of this Court, would fix whatever damages, if any, that have been sustained by Walker. In fixing these damages the Referee will not allow any item of damage unless it is proved by Walker with reasonable certainty. The Referee will allow all items of property damages to the fifteen 1972 model trucks as against Crane which are established by a preponderance of the evidence. He will also allow as against Crane what some of the courts refer to as economic losses, if any are established, which would include any profits that were lost as a direct and proximate result of the wrongs complained of in the complaint and found by this Court to have existed. Economic losses would also include the purchase of parts and costs of repair of the trucks directly and proximately resulting from the aforementioned wrongs. The Referee will examine with care any damages sought by reason of loss of profits as well as other items of damage in this case.

The Court will not presently reach a decision on the four 1973 model trucks since the Court was under a misapprehension of facts regarding these trucks until this afternoon when counsel advised the Court of the true facts.

█ In the opinion of the Court the proof fails to show that the component part (transmission) sold by Spicer was defective at the time it left the factory of Spicer. On the other hand, the witness whose name was Dr. Speckhart, the U.T. professor, stated that there was nothing wrong with the Spicer transmission. So far as he could determine the defect resulted after the parts were put together by Crane for which Spicer, in

the opinion of the Court, could not be held responsible.

█ Upon further consideration the Court finds and holds that Rockwell is liable along with Crane for the property damages proximately caused to the 1972 model trucks as a result of their defective condition. Rockwell is not liable, however, for the economic losses, if any, suffered by Walker as a result of the defective condition of the trucks. Privity has been abolished in product liability actions in Tennessee only with regard to "personal injury or property damage." T.C.A. 23–3004. This statute does not contemplate abolishment of privity with respect to purely economic losses (*i. e.* costs of repair, replacement of parts, or loss of profits) and Rockwell is therefore not liable for such losses. The basis of holding Rockwell liable for property damages is that it breached an implied warranty of merchantability.

Similarly, Rockwell and Crane are liable to Walker for property damage caused to the 1973 model trucks by their breach of implied warranties of merchantability, but they are not liable for purely economic losses, if any, sustained by Walker on account of the purchase of these trucks. Crane, as previously indicated, is liable to Walker for economic losses caused by the purchase of the fifteen 1972 model trucks under Section 552D of the Restatement of Torts, 2d.

Regarding the cross-actions between Crane and Rockwell, there is no basis under the facts and circumstances of this case for either to recover.

## SUPPLEMENTAL MEMORANDUM

This Memorandum supplements and amends, in part, the Court's previous findings of fact and conclusions of law which were rendered from the bench on July 23, 1975 and filed July 25th. The basic facts involved in the action are set out in the Bench Memorandum and need not be restated. The Court will now proceed to discuss the basis of its finding of liability with respect to defendants

Crane Carrier Corporation and Rockwell International Corporation.

### 1972 Model Trucks

Section 552D of the Restatement of Torts, 2d, as adopted in Tennessee[1], provides as follows:

> "One engaged in the business of selling chattels who, by advertising, labels or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for pecuniary loss caused to another by his purchase of the chattel in justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently."

■ This Section permits recovery for pecuniary loss caused by a defective product regardless of the existence of privity between the supplier of the product and the ultimate purchaser, *Cooper Paintings & Coatings, Inc. v. S.C.M. Corporation*, 457 S.W.2d 864, 867 (Tenn.App.1970), and disclaimers of liability by the supplier are ineffectual to defeat recovery. *Id.; Ford Motor Co. v. Taylor*, 60 Tenn.App. 271, 446 S.W.2d 521 (1969). Furthermore, this Section is applicable to transactions in a commercial setting as well as transactions involving pecuniary losses suffered by ordinary consumers. *Benco Plastics, Inc. v. Westinghouse Electric Corp.*, 387 F.Supp. 772, 785, n.22 (1974).

Representatives of Walker Truck Contractors, Inc., (Walker) were invited to a meeting in December of 1970 at Tulsa, Oklahoma (Crane's principal place of business). Officials of Crane represented to Walker that the 1972 model Crane Carrier truck would perform as well as or better than the Mack "Maxidine" truck. Walker was familiar with the Mack truck and felt that a truck better than or equal to the Maxidine would work well in its operation. Relying on this representation, Walker took delivery of fifteen of the Crane 1972 model trucks in September 1972. Walker's reliance was justified because Crane had knowledge of Walker's "heavy-duty" hauling operation and Crane accepted the responsibility for the overall design of the completed product.[2]

It was not seriously disputed at trial that Walker suffered repeated breakdowns with the 1972 model trucks. The source of the problems centered around failures of the drive train components.[3] The real controversy between the parties concerned the issue of causation. Defendants Rockwell and Crane contend that Walker's drivers abused the trucks by operating them beyond their design limits and by repeatedly overloading the trucks. Defendants further contend that the "pusher axles" were not properly utilized when the trucks were fully loaded.[4]

As pointed out in the Bench Memorandum, had the trucks been repeatedly overloaded or abused, there would have been evidence of excessive failures of

---

1. *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966).

2. At least one representative of Crane visited the Walker operation prior to delivery of the 1972 model trucks. This representative was shown Walker's hauling operation and the roads over which the trucks would be required to travel. Mr. Stuart Metz, of Crane, acknowledged on cross-examination that Crane accepted the responsibility for the overall design of the trucks and depended on its salesmen for general information as to component parts.

3. For purposes of this litigation the important drive train components are the engine, transmission, and rear-axle assembly. (This latter component was also referred to during the course of the trial as the "rear end" or "differential".)

4. The "pusher axle" or "third axle" as it is called is an axle with wheels located just forward of the two rear drive axles. It is designed to support part of the load when the truck is fully loaded and must be lowered by the driver from the cab of the truck. The pusher axle is not a driving axle, that is, it is not connected to the drive train, and it provides additional support to the frame of the truck.

wheel bearings, axles, and clutches. There was no evidence that such failures were other than normal for a heavy-duty hauling operation like Walker's. Mr. C. L. Walker testified that there was no substantial change in the trucking operation after the 1972 model trucks were put into service. Furthermore, there are some one hundred dump trucks of all makes in use in the Walker operation and there was no evidence that abuse had caused difficulties with these trucks.

There was evidence that the pusher axles were not always promptly installed on the fifteen 1972 model trucks, and there was evidence that the drivers did not always properly use the pusher axles even if they were installed.[5] The Court is unconvinced, however, that this was a significant causal factor in the difficulties experienced by Walker.

The technical reason given by defendants to explain why use of the pusher axle is necessary is that by distributing the weight of the fully-loaded truck over four axles instead of three, there will be less torque[6] on the drive train components. Mr. Joseph Speth, Rockwell's Manager of Applications Engineering, testified that with the pusher axle in service there would "conceivably" be more slip torque, thereby reducing the stress on the drive train assembly.[7] The

defendants produced no evidence on the magnitude of the effect of the nonuse of the pusher axle with regard to stress on the drive line components. In light of this and the other factors mentioned above the Court concludes that the pusher axle was primarily designed to prevent overloads on the other axles. We remain unconvinced, however, that Walker's failure to use the pusher axles from time to time was a significant causal factor in the difficulties experienced with the 1972 model trucks.[8]

A preponderance of the evidence shows that the drive train assemblies were not properly designed by Crane to withstand normal operation in Walker's business. As a proximate result of Crane's misrepresentations to Walker concerning the 1972 model trucks, Walker suffered serious pecuniary damage and is entitled to recover therefor under Section 552D.[9]

Although there was insufficient evidence to establish that Rockwell tortiously misrepresented its product to Walker, there was substantial evidence that Rockwell's rear-axle assemblies were not fit for the ordinary purposes for which Walker used them, and, as a proximate result, Walker suffered damage to its property. T.C.A. 47–2–314.

Under the case law of this State prior to the passage of T.C.A. 23–3004 (Supp. 1974), privity of contract was required

---

5. Crane shipped the trucks to Tennessee Truck & Equipment Co., Inc. (the distributor) without dump bodies and without pusher axles. Walker and Tennessee Truck were to be responsible for installation of these items. Two of the 1972 model trucks did not have pusher axles installed until February 1973.

6. Dr. Frank Speckart, plaintiff's expert, explained "torque" in layman's terms as being the twisting force that the engine transmits to the drive train assembly.

7. "Slip torque", as the term was used in this litigation, denotes slippage of the rear tires. This slippage occurs between the tires themselves and the surface on which the trucks are being driven.

8. Much was also said at trial about the fact that Walker specified a rear-axle ratio of 5.-

21 for the 1972 model trucks. The term "5.21 rear-axle ratio" means literally that for every 5.21 revolutions of the input shaft to the rear-axle assembly, the drive wheels turn one revolution. A 5.21 ratio provided Walker with trucks capable of higher highway speeds than the slower rear-axle ratio utilized in the prototype truck shown Walker at the 1970 meeting in Tulsa. The evidence showed that the different ratio specified by Walker was not a significant causal factor in its difficulties, since slower ratios (6.44) were subsequently installed in some of the rear axle assemblies and the difficulties continued nevertheless.

9. In light of this disposition of the case as to Crane, it is not necessary to consider Walker's allegations against Crane of negligence, strict liability in tort, and breach of warranty.

to maintain a warranty action. *See Hargrove v. Newsome*, 225 Tenn. 462, 470 S.W.2d 348 (1971) and cases cited therein. On April 10, 1972, the Tennessee General Assembly abolished the requirement of privity by virtue of the aforementioned statute which provides as follows:

> "In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action." [10]

Although no cases were found in which this statute has been applied to allow recovery against a remote supplier in a warranty action, the statute makes it clear that lack of privity is not a defense in warranty actions involving "personal injury and property damage."

■ Defendants seek to characterize the nature of the action as one for "economic injuries" alone. We disagree. The evidence showed that Rockwell's rear-axle assemblies were defective and caused serious physical harm not only to themselves but also to other drive train components. The vibrations along the drive train caused by Rockwell's defective product and Crane's deficient design caused cracking of the transmission casings, loosening of drive train components, and serious premature wear to the whole assembly. This damage, proximately resulting from the nonmerchantability of Rockwell's product, is recoverable under the provisions of the Tennessee commercial law. T.C.A. 47–2–715(2)(b).[11]

Rockwell approved the use of its SRDD rear-axle assembly in the 1972 model trucks. Exhibit 5. The record is replete with evidence that the SRDD's were defective and caused serious problems in various applications. *See e. g.* Exhibits 32, 33, 38, 44, 45. Rockwell admitted that some of the rear-axle assemblies were defective as delivered because improperly sized bolts were used in the manufacturing process. Other bolts were improperly torqued when the product left Rockwell's hands. Furthermore, all of the original input shafts to the rear-axle assemblies had to be replaced with stronger input shafts. When this replacement was made, the internal gears of the rear-axle assemblies began failing with regularity.

Rockwell relies on the disclaimer of implied warranties that was in existence between it and Crane to defeat Walker's recovery of property damage.[12] Even assuming, *arguendo,* that Walker was subject to the disclaimer of implied warranties made by Rockwell, under the facts and circumstances of this case, the limited and exclusive remedy failed of its essential purpose, and Walker is entitled to the available remedies under the Tennessee commercial law. T.C.A. 47–2–719(2); *Benco Plastics, Inc. v. Westinghouse Electric Corp.,* supra at 781; *Moore v. Howard Pontiac-American, Inc.,* 492 S.W.2d 227 (Tenn.App.1972).[13]

### 1973 Model Trucks

■ Upon further consideration of the case and examination of the authorities, we are convinced we were wrong in our original view that was expressed from the bench that Crane and Rockwell

---

10. The statute applies to this action since the trucks were delivered to Walker in September of 1972, after the statute had gone into effect. *See Cumberland Corp. v. E. I. DuPont de Nemours and Co.,* 383 F.Supp. 595 (E.D.Tenn.1973).

11. For a discussion of the difficulties faced in characterizing damages as "property damage" or "economic loss" see White & Summers, *Handbook of the Law under the Uniform Commercial Code,* § 11–4 (1972).

12. Walker cannot recover purely "economic losses" against Rockwell because T.C.A. 23–3004 (Supp.1974) abolishes privity as a defense only with respect to actions for personal injuries or property damage.

13. In light of the above disposition of the case as to Rockwell, it is not deemed necessary to consider the other alleged grounds of recovery for damages to the 1972 model trucks.

were liable to Walker for damages sustained by reason of the alleged defects in the four 1973 model trucks. The preponderance of the proof, if not all the proof, showed that the trucks were used for purposes for which they were not manufactured—namely, they were used for both off-highway and sustained highway service, when, in fact, they were designed for off-highway and limited highway operation. The technical explanation for why the trucks were misused is that the trucks were not designed with inter-axle differentials.[14] These four trucks were bought out of stock from the distributor. There was testimony that these trucks were designed for limited highway use as cement mixer trucks.[15]

### Measure of Damages

■ Crane is liable under Section 552D for the difference between the actual value of the 1972 model trucks and what the trucks would have been worth as represented. Further, Crane is liable for consequential damages proximately resulting from the defective design of the truck. *Ford Motor Co. v. Lonon*, supra.

Rockwell's liability, on the other hand, is limited to the property damage its product caused to the 1972 model trucks. Walker is not entitled to a double recovery on the damage done to its trucks. As was stated above, the damage to the trucks was proximately caused by a combination of defective design by Crane and defective rear-axle assemblies supplied by Rockwell. Accordingly, Walker is entitled to the following recovery:

1. As against Crane and Rockwell, jointly, Walker is entitled to damages in the amount of the difference between the actual value of the 1972 model trucks and the value of the trucks at the time of purchase had they been as represented to Walker.

2. In addition to the property damages, Walker is entitled to recover from Crane for consequential damages proximately resulting from the tortious misrepresentation of the 1972 model trucks.

As indicated from the bench, by agreement of the parties, the case was referred to Judge Bare to determine the amount of the damages after hearing proof and in accordance with the standards set forth above. Following the report of Judge Bare, a final order will enter.

---

14. This device (also referred to at trial as a "power divider") allows the gearing of the second driving axle to operate at a somewhat different speed than the forward driving axle. This feature is important to trucks which are to be used extensively on the highway because it prevents the two rear drive axles from exerting stress on each other which avoids premature wear and failure of the entire rear-axle assembly.

15. Counsel for Walker contended during final argument that Walker had relied upon Crane's original representations as to the 1972 model trucks when it purchased the 1973 model trucks. In light of the extensive problems Walker had experienced with the 1972 model trucks, this reliance, if any, was not justifiable when it purchased the 1973 trucks.